STATE *vs.* JAMES M. WRIGHT.

MARCH 24, 1944.

PRESENT: Flynn, C. J., Moss, Baker and Condon, JJ.

CONDON, J. This is an indictment for embezzlement. The case is here on numerous exceptions taken in the superior court by the defendant, but we find it necessary to consider only his exception to the denial of his motion for a directed verdict of not guilty and several other exceptions to the admission of evidence, and to a portion of the trial justice's charge to the jury.

Defendant was the treasurer of the town of Foster from May 1926 until August 1, 1940, when he resigned at the request of the town council. Prior thereto, on March 25, 1940, an official audit of his accounts had been ordered by the financial town meeting. Shortly after that time the defendant hired an auditor on his own account to also audit his books. The official audit disclosed a "shortage" in his accounts of $23,715.59.

Defendant's auditor testified for the defendant and he did not deny either the fact that the defendant was "short", according to his books and vouchers, or the amount of such shortage; but he claimed that this was only an apparent shortage, and that, in reality, the defendant had expended more money in the town's behalf than he had received. To

support this conclusion he relied mainly upon certain evidence, which had been submitted to him, of expenditures for the maintenance and operation of the town's police department, not appearing in defendant's books. He testified that he considered it good accounting practice to receive such evidence, if satisfactorily authenticated, in determining defendant's true financial situation in relation to the town. The official auditors relied only upon the defendant's vouchers and books of account.

Part of the time during which defendant held the office of treasurer from May 1928 to August 1, 1940, when he resigned, he was also chief of the police department and town sergeant. He testified that during this period of about twelve years he had annually expended certain sums of money in operating the police department, for most of which expenditures he produced no documentary record. In support of his claim he relied on certain checks drawn on his personal funds in the bank, on personal estimates of police needs for ammunition, equipment and transportation, and on estimates which were made, by his subordinates in the department, from memory only, of sums which they had received from him in cash for personal services. Some of these subordinates also testified in the same manner as to the transportation requirements of the department and that they understood those were paid for personally by the defendant.

On this evidence there was a clear conflict whether defendant had actually spent such sums on behalf of the town or not. Inasmuch as these claimed expenditures were not authenticated by proper vouchers, were not recorded in his books and had not appeared in his annual reports to the financial town meeting, it was for the jury to say whether they believed the defendant and his witnesses. On defendant's motion for a directed verdict of not guilty, the state was entitled to have the evidence viewed in the light most favorable to it, in accordance with the well-established rule. We are of the opinion that the superior court did not err

in ruling that the evidence here was sufficient to make an issue for the jury. Defendant's exception to the denial of his motion for a directed verdict of not guilty is therefore overruled.

The next question is whether the jury properly understood the narrow issue before them or were confused and led astray by certain rulings of the superior court admitting evidence objected to by defendant as prejudicial. Several of the defendant's exceptions which he took to such rulings, and which we believe to have merit, will now be considered.

· The issue on trial was a simple one. Did defendant embezzle the funds of the town of Foster? That was the only issue. Whether he kept his accounts as required by law, or whether he was indebted to the town and how much, or whether he had placed his property beyond reach of creditors, was not the ultimate question for the jury on this indictment. Evidence that was designed to bring any such issues before them, without first being shown to have a proper connection with the sole issue in the case, could only have the effect of misleading them or obscuring such issue, namely, whether defendant had fraudulently appropriated the town's funds to his own use.

We are of the opinion that the state erred in this respect almost at the outset of the trial. Its first witness was the town clerk of Foster, who, by virtue of his office, is clerk of the financial town meeting and recorder of the land records of the town. After having been examined as to the time when the town meeting ordered an official audit of the defendant's accounts with the town, he was later asked: "I will ask you whether or not, directing your attention of the amount to the month of May, 1940, I will ask you whether or not a conveyance of Mr. James M. Wright's property to Rex was not recorded in the books?" The defendant took an exception to the overruling of his objection to that question, and this is the first exception set out in his bill.

The obvious purpose of that question, as the state now contends, was to show that, after the official audit had been ordered, defendant transferred his real estate beyond reach of his creditors, thus raising an inference of his consciousness of guilt of the offense charged in the indictment. *Chaufty* v. *DeVries*, 41 R. I. 1, is cited by the state in support of the admission of the testimony for such purpose. Whether or not that case, which was a civil case for damages, is authority for the admission of like evidence in a criminal case, we need not determine now. Assuming, without deciding, that it was error to admit the deed for the purpose contended by the state, we are of the opinion that such admission did not prejudice the defendant in view of the testimony on his behalf that, after the town had ordered the official audit, the transfer was made by him in order to obtain funds for the purpose of retaining an accountant to audit his books. For this reason defendant's first exception is overruled.

However, the admission of that evidence opened the door for the state to introduce other evidence concerning the nature and probable legal effect of the transfer, which we do believe clearly prejudiced the defendant. Thus when Nathan M. Wright, Jr., a lawyer, was testifying for the defendant, the court allowed the state's attorney, over defendant's objections, to ask him the following questions: "Mr. Wright, isn't it a matter of fact that if a mortgage was negotiated on this property in May after it was transferred to Mr. Rex, and the bank granted the mortgage to Mr. Rex, that to the extent of the mortgage granted, that interest was put beyond the reach of creditors, if there were any creditors?" The next question was: "If later on it was found that the town had a claim against the town treasurer, they could not reach that particular interest as it belonged to the bank, isn't that so? . . . You see no necessity why he should have transferred to Mr. Rex first, is that correct? . . . On that hypothetical question."

These questions were inadmissible. First there was no sufficient evidence upon which such hypothetical questions could be based. Moreover, this witness had not testified in direct examination as an expert. Cross-examination of him as such was improper. Not only did the questions call for conclusions but also they were irrelevant and immaterial to the issue on trial, which did not in any way involve rights of creditors. Defendant's exceptions 26, 27, 29 and 30, to which they relate, are accordingly sustained.

During the examination of one of the official auditors the state asked him, without objection, the following question: "Of your own knowledge, what became of that cemetery fund, Mr. Bain?" And the answer thereto was: "It was spent for general fund purposes." Over the objection of the defendant, the witness was then asked: "Was there any authorization as far as a council record was concerned or insofar as any enactment of a town ordinance that you could find, authorizing the doing of that?" The answer was "I found no such authority." The admission of such testimony is the subject of defendant's twenty-third exception.

Whether or not the treasurer was authorized to use the cemetery fund for general town purposes was immaterial and irrelevant. When the state's witness testified that such fund was spent for the town's benefit, that answer negatived any claim that such fund had been appropriated by the defendant to his own personal use. Whether or not defendant had the right to thus mingle a trust fund with town funds was not on this evidence an issue here. The only effect of the question which was objected to was to show that defendant had misapplied a trust fund; but the defendant was not being tried for such a dereliction of duty. To direct the attention of the jury to such an extraneous issue not only tended to confuse their minds as to the real issue but also to prejudice the defendant as one who could not be trusted. Defendant's twenty-third exception is, therefore, also sustained.

During the cross-examination of defendant's personal auditor, the state was permitted, over defendant's objections, to interrogate him as follows: "Mr. Rex, I am going to read Chapter 335 of the General Laws of Rhode Island, 1938, the title of which is 'The Town Treasurer'. Section 2. 'Town treasurers shall, at the annual town meeting, make a statement of their accounts in writing, showing the several sums received and paid by them during the previous year, and showing in detail the person to whom and the purpose for which the payments were made.' At the time that you audited the records of the town treasurer, were you familiar with that law? Mr. Rabinowitz: I object, may it please the court, and I object to any further reading of the statute, because Mr. Wright is not being tried under that statute. The Court: Objection overruled, and exception noted. The statute is being read with the express consent of the counsel for the defendant. Proceed." Defendant's auditor was then asked: "Were you familiar with that law, Mr. Rex? . . . You understood the law required the town treasurer to keep his papers, his vouchers and his receipts after payment on file, right?"

The court was in error when it stated that counsel for the defendant had expressly consented to the statute being read. Defendant's counsel had expressly stated a short time before that he had no objection to the reading of the statute under which the defendant was being tried. Defendant was on trial for the crime of embezzlement.

General laws 1938, chap. 335, §2 sets out an offense that is separate and distinct from the common-law crime of embezzlement. The general rule, which is universally applied, is that evidence of such a separate and distinct offense is not admissible in aid of the conviction of the defendant of the offense for which he is being specifically tried under the indictment. Several reasons are advanced in support of this rule but the principal ones which are usually stressed are that it is contrary to the policy of the common law to convict a man of one crime by proving that at some time

previous he was guilty of another; and that the defendant comes to trial prepared to defend only the crime charged against him in the indictment and therefore should not be unjustly burdened with the defense of another of which he has had no notice.

The rule is a sound one because, in forbidding evidence of this character, it preserves the jury from the danger of prejudice against the defendant and avoids a multiplication of issues which may tend to confuse and mislead the jury. There are exceptions to this rule where the purpose of the evidence is first shown to be to prove intent, motive, or malice, or a criminal plan or design, as in the crime of conspiracy. But it has been held that when introduced for such purpose it must be carefully restricted. 16 C. J. 587. It does not appear on the record here that the evidence objected to comes within any of those exceptions, or that it was properly restricted.

It should be remembered that this question was asked of the defendant's accountant and not of the defendant. If the purpose of the question was to show that the defendant knew of the requirements of the statute in question merely because his accountant may have known of them, it was inadmissible, because such knowledge of the accountant in the circumstances would not be binding on the defendant under this indictment. On the other hand, if it was the state's purpose to develop by such evidence only the witness's knowledge of that statute in order to show that, at the time he was making his audit he, as an accountant, knew that the treasurer was required by law to keep a complete record of his receipts and disbursements and make an annual report thereof to the town meeting, then the jury should have been cautioned that they were to consider it only for such purpose. The manner in which the statute was referred to and read in the presence of the jury clearly manifested the extreme need of some such word of caution to make sure that the jury would not be confused, as to the effect of such evidence, to the defendant's prejudice.

The admission of this testimony without any limitation and unaccompanied by any words of caution by the court was the foundation of a later error in the court's charge to the jury, wherein it recalled this particular statute to their attention by again reading it to them and instructing them as to the duties of a town treasurer thereunder. Such repetition of the original errors in admitting testimony concerning this statute is enough to convince us of the prejudice to the defendant which resulted therefrom. Defendant's exceptions 68, 69, 70 and 71, to the above rulings, and exception 82 to the above-mentioned portion of the court's charge, are accordingly sustained.

A member of the Foster town council testified for the state in rebuttal and was asked the following questions over the defendant's objections: "Is the situation insofar as the amount of work required of the police chief the same since Mr. Bennis has been chief, as it was during the time Mr. Wright was chief of police? . . . Does the present chief of police own his own car that he uses for police work or does the town furnish the car?" These questions do not clearly show what the state's attorney was seeking to elicit by this line of inquiry. They appear to go further afield in admitting evidence of facts arising after a crime has been committed than is generally permitted. Nevertheless, we cannot say that their admission here was clearly prejudicial to the defendant as they very likely would have been if the state's attorney had been allowed to pursue this line of inquiry further. When he tried to do so later, the trial justice quite properly cautioned him as follows: "It seems to me to bring in something after a crime is committed to show that someone else doesn't do this or that, you are on dangerous ground. I wouldn't press it if I were you." We agree in this respect with the trial justice, and add the further caution that questions such as the ones first objected to be carefully restricted, if the trial justice in the next trial allows them.

The exceptions which we have hereinbefore specifically sustained require that defendant be granted a new trial regardless of the strength or weakness of his explanation of the admitted "shortage" in his accounts. It is his right to be tried solely on the charge laid against him in the indictment.

Those exceptions which we have not discussed are, in our opinion, so lacking in merit that they need not be considered and may be deemed to be overruled. Defendant's other exceptions, as hereinbefore indicated, are sustained.

The case is remitted to the superior court for a new trial.

*John H. Nolan,* Attorney General; *John O. Pastore,* Assistant Attorney General; *John J. Cooney,* for State.

*James H. Kiernan, Sidney L. Rabinowitz,* for defendant.