32161, 32162. REEVES *v.* THE STATE (two cases).

DECIDED DECEMBER 3, 1948.

*M. G. Hicks,* for plaintiffs in error.

*E. J. Clower, Solicitor-General,* contra.

TOWNSEND, J. (After stating the foregoing facts.) ■ Although the defendants were tried at separate terms of court and by separate juries, and although the records in each case are not identical, yet they are sufficiently similar to be considered together.

Special ground 1 of each amended motion for new trial is based upon the failure of the trial judge to submit in his charges to the juries the offense of assault and battery; it being contended that this offense was contained in the bill of indictment, and that the evidence would have authorized the jury, in each case, to return a verdict of guilty of assault and battery instead of assault with intent to rape.

Each indictment charged the defendant with a felony, for that each one (naming him) did, on October 4, 1947, in the county of Floyd, attempt to commit a violent injury on the person of Hannah McDaniel, a female, and did then and there unlawfully beat her, all of which he, the said accused, so did with the intent and purpose then and there to have carnal knowledge of her, forcibly and against her will.

According to the evidence, the prosecutrix, a 16-year-old girl, who went to school at Cassville and worked Friday, Saturday, and sometimes Sunday nights from 11 o'clock until 7 the next morning at the Union Bus Terminal in Rome, was waiting to catch a bus at the store of M. W. Price between 6:15 and 7 on the evening of October 4, 1947. The two defendants were there in their car, and according to the prosecutrix, after each of them had asked her to get in the car with them and go riding, Harold Reeves took hold of her arm and pulled her over to the car and got in after her. Doyle Reeves came around and got in the other side and drove them away. Several people were present at the time the party left Price's store. They drove for some distance and parked in front of Robertson's store where beer was sold. The prosecutrix, in detailing the particular acts alleged to have been committed by Harold Reeves, testified as follows: "Doyle got out and went in (Robertson's store) and he (Harold) stayed in the car and I wanted to get out and leave, but he wouldn't let me. . . Doyle came out and give him a bottle of beer and he drank part of it and turned the car around and went down the road a little piece.

I was in the car. He stopped the car and said, 'Let's get in the back seat.' And I wouldn't do it and he grabbed my pocketbook and throwed it in the back seat and started to get on top of me, and I tried to push him off and open the door and I was so scared I didn't know what to do. I told him to get out, I thought maybe I could get away from him. I kept trying to pull away from him and he said, 'Well, come on, get in the back.' He made me get back in the car and we went back out by the place. When we were at that place, he tried to stick his hand up my dress. . . He tore my panties. That was not with my consent. . . I tried to push him off. He did not have intercourse with me. I kept trying to pull away from him and he said 'Well, come on, get back in.' He pulled me back in the car and got back in, and he turned around and went back out to the place where Doyle was at, and Doyle came out and gave him another bottle of beer and some more in a sack, and he put them in the back of the car. After Doyle had given him some beer, a man and a woman came out to the car and the man started talking to him and then he walked off, him and the woman, and a little bit later Doyle came out there and got in and drove off."

The prosecutrix in detailing the particular acts alleged to have been committed by Doyle Reeves testified as follows: "He (Harold) went out there to the beer stand and picked Doyle up, and they drove back up out to the highway, back up to Dyke's Creek, and went back several miles, I don't know how many it was. They stopped when they got to a place where there wasn't any house, wasn't nothing around there but woods, and they pulled up to the side of the road and stopped. Doyle was still driving. Then they started fussing, one said he was going to be with me first, and the other said he was. Finally Doyle said that Harold could be and he would drink some more beer for a while. We were still up in the front seat at the time. Doyle then got out of the car, and I begged Harold to get out, I thought maybe I could get away from him as he was getting out. When he got out, I got away from him and run down through the woods a piece and I got on the road and I kept running. I heard the car coming and I got in the woods and started back, I got in the road and

started back towards home, and when I got almost in front of the house, well, they came along and stopped and both of them were in the car then. Harold . . told me to get in the car and he would carry me to town, and I wouldn't get in. I told him I just wanted my pocketbook and to go on and leave me alone. He kept asking me to get in the car so he could carry me to town. Then Doyle got out and Harold drove on. Doyle told me to come on behind the weeds so he (Harold) wouldn't carry me to town. He pulled me over in the weeds, and after Harold passed by in the car he made me go across the cornfield with him. When we were about middleways of the cornfield he pushed me down and got on top of me. I begged him to leave me alone and he wouldn't, and finally I told him I would do it later if he would wait. . . So he took me on out to the road and walked on until we got close to a little bridge, and he pulled me out to the weeds again and said he wasn't going to let me put him off any longer, and he pushed me down and got on top of me and I kept trying to get him off of me . . and I couldn't and as he got his hand up my dress I screamed and jumped up and run."

On cross-examination, she admitted that she saw people in Robertson's store while parked in front of it after her experience with Harold and did not call to them to help; also that, when she was away from them and they came along in the car, she came up to the road, and when they stopped, she asked for the return of her pocketbook; also that, after her last experience with Doyle when she got away from him, he did not pursue her.

Several witnesses testified on behalf of the defendants in each of their cases, and each of the defendants testified in behalf of the other. Generally this evidence was to the effect that, when the prosecutrix got in the car with the defendants and while she was in the car with them, the witnesses who observed her saw nothing to indicate that she was not enjoying her outing. Each of the defendants made statements, Doyle stating that he "played around with her and she did not want to do anything, and I loafed around and she said 'I've got to go home. I left my pocketbook in your·brother's car.' So we left there and

went to Blue Pond Church." Harold Reeves stated that, "I didn't try to bother that girl no way at all. . . I didn't have my hand on her at all, and I didn't tear them pants there, gentlemen, I didn't touch her in no way."

The indictments in each case embraced the charge of assault and battery. In *Barton* v. *State*, 58 *Ga. App.* 554 (199 S. E. 357), it was held: "Under an indictment for assault with intent to rape, which so describes the manner of the commission of the offense as to contain allegations essential to constitute the lesser offense of assault and battery, where the evidence will consistently support a verdict for either offense, it is reversible error for the trial judge, without request, to fail to charge to the jury the law with reference to the offense of assault and battery." On the trial of one charged with assault with intent to rape, where the indictment is sufficiently broad to include therein the offense of assault and battery, and where the evidence is inconclusive as to whether the assault by the accused was with the intention to gain the woman's consent to sexual intercourse, or whether it was with the intention to overpower her and commit rape, it is error for the court to fail to submit to the jury the law of assault and battery. See *Fields* v. *State*, 2 *Ga. App.* 41 (58 S. E. 327), *Smalls* v. *State*, 6 *Ga. App.* 502 (65 S. E. 295), *Barton* v. *State*, supra, and cases cited.

In the instant case, the jury were authorized to find that each of the defendants committed an assault upon the prosecutrix, and that their purpose in so doing was to have sexual intercourse with her; but the question of whether the assaults were committed with the intention to gain her consent to sexual intercourse, or whether the same were committed for the purpose of overpowering her and committing rape, is for the determination of the jury. As was said in *Barton* v. *State*, supra, with regard to the question of intent — "The jury are the sole arbiters; and had they been given the right to convict the defendant of the lesser offense of assault and battery, instead of being given only the alternative of acquitting him or finding him guilty as charged, they might have given him the benefit of any doubt existing in their minds on this question."

In the instant case, the failure of the prosecutrix to complain after her experience with Harold Reeves in the first instance

and their return to Robertson's store, where she admitted that a man and a woman came up to the car and talked with Harold, her failure to call to people inside the store, her return to the highway to get her pocketbook after she had escaped from both of the defendants, the lack of persistence on the part of Harold Reeves in the first instance, and the failure of Doyle Reeves to pursue her in the last instance, would have authorized the jury to have found that the assaults were committed with the intention on the part of each of the defendants to gain her consent to sexual intercourse.

Therefore it necessarily follows that, since the language of each of the indictments embraces the offense of assault and battery, and since the evidence in each case would have authorized the jury to find the defendant guilty of assault and battery, the court erred in each of the cases in failing to charge the jury as to this offense.

■ Ground 2 of the amended motions for new trial as to each of the defendants complains that the court in each case permitted testimony on behalf of the State as to the conduct of the other defendant at a time when the defendant on trial was absent.

Special ground 3 on behalf of the defendant Doyle Reeves complains of the admission in evidence of certain wearing apparel which the prosecutrix was alleged to have been wearing on the occasion in question.

As to special ground 2 of both motions, it would have been very difficult for the court to have invoked rulings whereby this evidence could have been kept entirely separate, due to the fact that the defendants were together and apart on several different occasions throughout the evening.

As to these grounds and ground 3 of the amended motion of the defendant Doyle Reeves, it was not error to admit the evidence because, even if its admissibility was doubtful, it should have been admitted and its weight and effect left to the jury. See *Albany Phosphate Co.* v. *Hugger Bros.,* 4 *Ga. App.* 771 (6) (62 S. E. 533) ; *Purser* v. *McNair,* 153 *Ga.* 405 (2) (112 S. E. 648) ; *McClelland* v. *State,* 27 *Ga. App.* 783 (3) (110 S. E. 245) ; Johnson v. *Wilson,* 47 *Ga. App.* 621 (171 S. E. 235).

Also, had this evidence been inadmissible, it would have been

harmless error as to the conduct of the two defendants, who were tried separately and by different juries, because the jury in each case would necessarily understand that the defendant on trial was not connected with the conduct of the other brother which occurred in his absence. We also fail to see wherein the admission of the wearing apparel was harmful.

The court committed reversible error for the reasons outlined in the first headnote and the corresponding division of this opinion.

*Judgments reversed in both cases. MacIntyre, P. J., and Gardner, J., concur.*