306 A.2d 36.

STATE *vs.* DAVID EMANUEL COSTA.

JUNE 12, 1973.

PRESENT: Roberts, C. J., Paolino, Powers and Kelleher, JJ.

Powers, J. This is an indictment charging the defendant with knowingly and willfully striking a uniformed conservation officer in violation of G. L. 1956 (1969 Reenactment) §11-5-5.[1]

---

[1]The section in question reads as follows:

"11-5-5. Assault of police officers and firemen.—Any person who shall knowingly and wilfully strike a uniformed member of the state police, metropolitan park police, conservation officers, state properties patrolman, or city or town police forces or fire departments causing bodily injury while the member is engaged in the performance of his duty shall be deemed to have committed a felony, and shall be imprisoned not exceeding three (3) years or fined not exceeding fifteen hundred dollars ($1500) or both."

The case was tried to a Superior Court justice and a jury which returned a verdict of guilty as charged. It is before this court on defendant's bill of exceptions, which contains four exceptions that were orally argued and briefed. However, in the view we take of the case, we need consider only two exceptions, the first being that taken to the denial of his motion for a directed verdict.

The record establishes that on August 27, 1969, state conservation Officer Jacques observed defendant operating a boat in Bullocks Cove, East Providence, which bore no registration number contrary to now G. L. 1956 (1970 Reenactment) §46-22-3.[2] Officer Jacques, who was on the dock, called defendant to come in for questioning regarding the operation of an unregistered motor boat.

The defendant came in as requested and, on being questioned by Officer Jacques, admitted that the boat was unregistered. When asked for his name, however, defendant replied that he would furnish such information after he put his gear in his pickup truck which was parked in the parking lot at the time. It is undisputed that having made this response, defendant pulled away from the dock, ignoring Officer Jacques' command to stop.[3]

Officer Jacques went to the parking lot and found a pickup truck from which he took registration data. From this data, he determined the name and address of its registered

---

[2] A violation of the foregoing is made a misdemeanor by G. L. 1956 (1970 Reenactment) §46-22-19.

[3] The record establishes that defendant was charged with and pleaded nolo to a violation of now G. L. 1956 (1970 Reenactment) §46-22-17.3. This section provides:

"46-22-17.3. Refusal to stop on order or command.—It shall be a misdemeanor punishable by a fine of not more than one hundred dollars ($100) for any person to refuse to move or to stop on an oral command or order of any employee of the department of natural resources in the exercise of his duties under this chapter."

owner, went to the indicated address, but found no one home.

Prior to this Officer Jacques had radioed for assistance and was eventually joined by two other conservation officers named Kerrigan and Danielson. Together, they set up a surveillance which brought them in contact with defendant's father when the latter picked up defendant's truck at the parking lot.

The defendant's father inquired as to what might be the difficulty, and on being told, agreed to and did escort the officers to defendant's home. There, according to the officers, the father entered defendant's home and shortly thereafter emerged with defendant. Again, according to the officers, defendant became abusive and refused to co-operate in the matter of the unregistered boat. When told that this could mean his arrest, defendant attempted to re-enter his home.

Thereupon, he was told that he was under arrest and Officers Kerrigan and Danielson, at Officer Jacques' direction, started to take defendant into custody, each taking hold of an arm or an elbow. There is evidence that defendant resisted and a scuffle ensued during which, according to the testimony of the officers, defendant willfully struck Officer Danielson in the left rib cage with an elbow. The force of the blow was such as to result in swelling, redness and sensitivity to such an extent as to require medical attention at the hospital.

It is defendant's position that while much of the three officers' account of what transpired is substantially correct, it is not true that he willfully and knowingly struck and caused bodily injury to Officer Danielson while the latter was in the performance of duty. Rather, he contends that the striking was incidental to his attempts to pull his arms free while resisting an unlawful arrest.

It is in connection with this contention that defendant

606

presses an exception taken to the denial of his motion for a directed verdict.

In support of this exception, defendant argues first, that the purported arrest by Officer Danielson was illegal in that said officer attempted to make the arrest without a warrant so to do, and secondly, that there is no evidence whatsoever from which it could be found that defendant had committed a misdemeanor in the presence of Officer Danielson.[4]

In lieu of such evidence, defendant points out, the state relies on the misdemeanor committed in the presence of Officer Jacques. See note 3.

The state readily concedes that the arrest of defendant by Officer Danielson was for the misdemeanors committed in the presence of Officer Jacques and of which Officer Danielson had no personal knowledge. However, what defendant overlooks, the state argues, is the provision of G. L. 1956 (1969 Reenactment) §12-7-3(c) which is as follows:

> "(c) The officer has reasonable ground to believe that the person to be arrested has committed a misdemeanor and either has fled from the scene of the crime or is a nonresident of this state and cannot be arrested later."

On the strength of this authority then, the state urges, Officer Danielson was making a valid warrantless arrest, hence, in the performance of his duty when, according to the state's evidence, he was willfully and knowingly struck by defendant.

We are inclined to agree with the state that, assuming

---

[4]General Laws 1956 (1969 Reenactment) §12-7-3 provides in pertinent part as follows:

"12-7-3. Arrest without warrant for misdemeanor.—A peace officer may without a warrant arrest a person for a misdemeanor, whenever:

(a) The officer has reasonable ground to believe that a misdemeanor has been or is being committed in his presence and that the person to be arrested has committed or is committing it."

that Officer Jacques, in whose presence defendant had committed a misdemeanor, had made known to Officer Danielson the circumstances relative to defendant's refusal to obey a lawful command (see note 3), Officer Danielson would have had reasonable grounds to make the arrest without a warrant in accordance with §12-7-3(c). *See State* v. *McWeeney*, 100 R. I. 394, 216 A.2d 357 (1966). That Officer Jacques did so inform Officer Danielson, the state argues, can be reasonably inferred from the circumstances of the facts in evidence.

Whether such inference is reasonable however, we need not inquire, for the reason that we have no hesitancy in holding that a peace officer is in the performance of his duty when making an arrest without a warrant for a misdemeanor not committed in his presence, if the arrest in question was made in assisting a fellow officer in whose presence the misdemeanor in question was committed. Such is the case here.

Consequently, defendant's exception to the denial of his motion for a directed verdict is without merit and overruled.

The defendant's remaining exception, calling for consideration, is more troublesome. It was taken to the trial justice's denial of defendant's motion to pass the case, which motion was prompted by Officer Danielson's testimony concerning defendant's identity.

In the course of his direct examination, this witness explained that information regarding ownership of the pickup truck was obtained from the Registry of Motor Vehicles. Counsel for the state then inquired:

"Q  And was further check made on the data obtained from the registration data?"

To this, Officer Danielson replied,

"A  Yes, we did obtain a record information."

Asked to identify the agency from which such record information was obtained, Officer Danielson replied,

"A The State Bureau of Criminal Investigation."

No objection was raised to this answer and counsel for the state then asked:

"Q And who was the truck registered to?"

To this, Officer Danielson, referring to defendant, replied,

"A I believe it was registered to David, David E. Costa."

Then asked,

"Q You further checked out this with the B.C.I. so-to-speak?"

Officer Danielson answered,

"A Checked his criminal record."

At this juncture, it should be noted that defendant had not put his credibility in issue. Consequently, in light of Officer Danielson's reference to a criminal record, counsel for defendant informed the court that he desired to make a motion. The jury was removed and in their absence, counsel moved that the case be passed, contending that the witness's improper reference to a criminal record was so prejudicial as to deprive defendant of a fair and impartial trial.

The trial justice acknowledged that the challenged testimony was objectionable and ordered it stricken. He denied the motion to pass, however, pointing out that there had been no objection to the questions which resulted in eliciting reference to a criminal record.

Moreover, with their return to the courtroom, he addressed the jury as follows:

"The Court: Mr. Foreman, ladies and gentlemen of the jury, the last three or four questions and answers that were given by this witness contained clearly hearsay, irrelevant to this case. I've granted the defendant's motion to strike those questions and answers. You are to disregard that testimony."

It is on the state of the foregoing that defendant urges this court to set aside his conviction and remit the case to Superior Court for a new trial. He does so by asking that we apply to the facts of the case at bar, the principle followed by this court in *State* v. *Peters,* 82 R. I. 292, 107 A.2d 428 (1954).

There, the prosecutor, in his opening remarks, brought to the attention of the jury the fact that Peters and one other had been indicted for the offense for which Peters was to go on trial. He further informed the jury that the other defendant was not being tried because he had pleaded nolo on the previous day and had been sentenced to one year.

Counsel for Peters objected and moved that the case be passed. The trial justice denied the motion, but stated that he would take pains to instruct the jury that the prosecutor's comments had no bearing on the guilt or innocence of Peters and should be ignored by them. No such cautionary instruction was given, however.

In passing on the exception taken by Peters to the trial justice's refusal to pass the case, this court applied the rule to criminal cases that had previously been enunciated in civil appeals. Specifically, quoting from *Lavigne* v. *Ballantyne,* this court in *State* v. *Peters, supra* at 297, 107 A.2d at 430-31 stated:

> " 'When improper and extraneous matter of a harmful nature is intentionally injected or accidentally creeps into the evidence, it is the duty of the trial justice, upon complaint being made, to free the evidence from such matter, if possible, with proper warning to the jury. On the other hand, if this is not reasonably possible, then he ought to pass the case.' "

The *Peters* court, noting that no cautionary instruction had been given, sustained the defendant's exception. In so doing, moreover, the court made clear that even when cautionary instructions are given, there remains for the appel-

late court the question of whether such instructions were adequate to have disabused the jury's mind of the prejudicial effect of the objectionable evidence.

Since in the case at bar the trial justice took such steps, the question for this court is whether his cautionary instructions can be fairly said to have removed from the minds of the jurors, when weighing the evidence properly before them, the taint represented by the enveloping smoke of a criminal record. We think not.

It is at least open to question that some of the jurors may have been uncertain as to what it was about "the last three or four questions and answers" they were to ignore, there being no specific reference to the tainted testimony. It may well be that, in the opinion of the trial justice, specificity could only make matters worse. But, if he were convinced of this, defendant's right to a fair and impartial trial mandated that the case should be passed. If, on the other hand, it was his opinion that the taint could be effectively eliminated, his cautionary instructions should have been such as to leave no doubt as to their effectiveness.

Concluding that the cautionary instructions as given cannot fairly be said to have achieved the purpose desired, we are not unmindful that trial court justices do not have the twenty-twenty hindsight with which appellate courts are endowed. Confronted with the problem faced by the trial justice in the case at bar, they can only do that to which they are inclined by their judgment at the moment the problem arises.

Having determined that the objectionable testimony was of sufficient taint to impair defendant's right to a fair and impartial trial and further determining that such taint was not removed from consideration by the jury, there remains the question of whether defendant's failure to object to the questions is fatal to his claim of prejudice. Sound and desirable trial procedures dictate that a litigant should not

be permitted to sit idly by, indifferent to questions which, in addition to being improper, are clearly susceptible to evoking prejudicial responses. Hence, when the record clearly establishes that when prejudicial responses could have been avoided by timely objection to the questions which resulted in such responses, the party failing to object should not ordinarily be heard to complain thereafter.

Applying such rule to the case at bar, we are frank to acknowledge that the question is close, but close questions in criminal cases must ordinarily be resolved in favor of the accused, in light of the latter's entitlement to the benefit of a reasonable doubt. Here, defendant evidenced immediate objection to Officer Danielson's statement, "[c]hecked his criminal record." This statement was made in response to the prosecutor's question, "You further checked out this with the B.C.I. so-to-speak?"

It may be argued that counsel for defendant could have forestalled the answer by a timely objection to this question. However, the question called for a "yes" or "no" answer and, the question having been asked, counsel for defendant may have felt that less harm would result than would be the case if he focused attention on the question.

Surprisingly, no criminal case has been called to our attention, nor has our independent research been more fruitful in establishing a precedent as to the requirement of timely objection. However, in *Demara v. Rhode Island Co.*, 42 R. I. 215, 107 A. 89 (1919), this court held that it was reversible error for the trial justice not to have granted defendant's motion to pass the case, notwithstanding defendant's failure to object to the question which elicited the prejudicial response.

In light of the circumstances surrounding the manner in which prejudice came into the case at bar, we are persuaded that the latitude accorded the defendant in *Demara v.*

612

*Rhode Island Co., supra,* should govern our disposition here.

The defendant's exception to the denial of his motion to pass the case is sustained and the case is remitted to the Superior Court for a new trial.

Mr. Justice Joslin and Mr. Justice Doris did not participate.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Assistant Attorney General, *R. Raymond Greco,* Special Assistant Attorney General, for plaintiff.

*Anderson & Kane, Charles H. Anderson,* for defendant.