339 A.2d 742.

STATE *vs.* ANTHONY J. SFAMENI.

JUNE 19, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

PAOLINO, J. This indictment charging the defendant with assault with a dangerous weapon was tried before a justice of the Superior Court and a jury and resulted in a verdict of guilty. The trial justice sentenced the defendant to serve a term of 18 months at the Adult Correctional Institutions. On February 8, 1974, we granted the defendant's motion for admission to bail pending this appeal. The case is before us on the defendant's appeal from the judgment of conviction.

The facts are not complicated. We shall discuss only those pertinent to the issues raised by this appeal. The record indicates that at about 5 p.m. on Saturday, June 28, 1969, Officer John Murtagh saw defendant and a younger boy sitting in a car in an area at the rear of 369 Charles Street in the city of Providence. The officer observed defendant drinking from a bottle. Officer Murtagh and another police officer approached defendant's car and questioned defendant. Officer Murtagh testified that a scuffle occurred between them during which defendant assaulted him with a tire iron.

The defendant testified in his own defense. He denied assaulting the police officer and gave his version of what happened and explained his presence in that area by saying he was there to pick up work at two jewelry shops.

The issues raised by this appeal relate to certain rulings made by the trial justice in overruling defendant's objections to certain comments made by the prosecutor and to certain questions and comments made by the trial justice during the proceedings in the Superior Court.

We consider first defendant's contention that the trial justice erred in denying defendant's motion to pass the

case because of certain prejudicial comments made by the prosecutor. During his opening statement to the jury the prosecutor said:

> "When they got to the rear they saw Mr. Sfameni and a younger boy about sixteen or seventeen years old in the car, and they were drinking something out of a bottle, and the testimony will show that this bottle was similar to something you would get in a drug store as a cough medicine or something like that —."

The defendant immediately moved that the case be passed because of the prosecutor's reference to a "medicine-like substance." He argued that such reference was not only immaterial to the issue of defendant's guilt for the offense charged, but also highly prejudicial to defendant's right to a fair trial. During the bench conference which ensued, the trial justice stated that he was going to instruct the jury to ignore that portion of the prosecutor's remarks to which defendant objected, namely, the reference to the fact that defendant was drinking out of a bottle that looked like a cough medicine bottle. The following colloquy then occurred between the prosecutor and the trial justice:

The Prosecutor:

> "That is what he is going to testify to, your Honor. I am going to ask him what he saw them doing. He saw them drinking out of a bottle as he approached the car, and I will ask him what he observed, and he will say he saw them drink out of a bottle, small bottle similar to that looking like a bottle in a drug store."

The Court:

> "If he does that, I will grant a motion to pass the case."

After denying defendant's motion to pass the case, the trial justice addressed the jury. In referring to the challenged comment of the prosecutor, he said:

"I believe his reference was that there was a bottle that looked like the kind that you see in a drug store, the kind that would have cough medicine in it. I am going to instruct you to ignore everything about anything about a bottle that looked like cough medicine. The charge for which this man is presently on trial is one of assault with a dangerous weapon, and that is all we are concerned about, assault with a dangerous weapon."

Later, during the prosecutor's direct examination of Officer Murtagh in rebuttal, the following dialogue occurred:

"Q And did Mr. Sfameni ever lose consciousness during that entire period?

"A No

"Q Never was knocked out?

"A No, he wasn't knocked out. He was groggy actually before — during the conversation before—he was groggy when I asked him about the —."

The defendant again objected and the trial justice overruled the objection.

Again, during his closing argument to the jury, the prosecutor argued as follows:

"You can draw an inference as to why those two men were back there in back of those businesses on Charles Street at five o'clock on Saturday afternoon in the summer when it was closed."

- The defendant again objected and renewed his motion to pass the case. The trial justice denied the motion, but cautioned the jury to disregard the statement made by the prosecutor "as to the reason for the men being behind that place." He again instructed the jury that the case on trial was an indictment charging defendant with committing an assault with a dangerous weapon.

The defendant argues here, as he did before the trial justice, that the references to the fact that he was drinking out of a bottle that looked like a cough medicine

bottle were extraneous to the issues in this case and tended to inflame the passions of the jury and thereby deprive him of a fair trial.

The state denies defendant's claim and argues that even if the comments and references objected to were improper, they were not so flagrant as not to have been cured by the trial justice's prompt instructions to the jury. *State v. Kozukonis*, 100 R. I. 298, 305, 214 A.2d 893, 898 (1965).

The determination of whether a questioned statement is harmless or improperly prejudicial is, in the first instance, addressed to the sound discretion of the trial justice. As the court said in *State v. Peters*, 82 R. I. 292, 296-97, 107 A.2d 428, 430 (1954):

> "It is generally held that the determination of whether a questioned statement is harmless or prejudicial cannot be decided by any fixed rule of law. Each case must necessarily be determined on its own particular facts. In the first instance the decision of such question rests in the sound discretion of the trial justice. It is his duty to protect the parties, in both civil and criminal cases, against any utterance or conduct of attorneys that would or reasonably might tend to prejudice either of them with the jury, as it is highly important that their verdict be above suspicion of any unlawful influence."

The question we must decide, therefore, is whether in the context of the facts in this case, the trial justice exercised proper discretion in refusing to pass the case.

In *Lavigne v. Ballantyne*, 66 R. I. 123, 126, 17 A.2d 845, 846 (1941), this court stated:

> "When improper and extraneous matter of a harmful nature is intentionally injected or accidentally creeps into the evidence, it is the duty of the trial justice, upon complaint being made, to free the evidence from such matter, if possible, with proper warning to the jury. On the other hand, if this is not reasonably possible, then he ought to pass the case."

The question of the correctness, or incorrectness, of the trial justice's ruling refusing to pass the instant case must be examined and reviewed in the context of the record before him. This case involves a charge of assault with a dangerous weapon; the question before the jury was whether defendant assaulted Officer Murtagh with a tire iron at the time and place alleged. The state claims that defendant did so and defendant testified that he did not. Since it was defendant's word against that of the police, credibility was the decisive factor in this case.

It is clear from the record that the trial justice agreed with defendant that the prosecutor's reference in his opening statement was objectionable. This is shown by his instruction to the jury to ignore the prosecutor's comment and by his warning that he would pass the case if the witness referred to the objectionable matter. Yet, notwithstanding the trial justice's instruction and admonition, Officer Murtagh again referred to the objectionable matter, though indirectly, by his testimony in rebuttal that defendant

> "* * * wasn't knocked out. He was groggy actually before — during the conversation before — he was groggy when I asked him about the —."

Officer Murtagh's testimony and the prosecutor's statement in his closing argument to the jury, both set forth above, were clearly contrary to the trial justice's instructions and admonition. And furthermore, the comments above gave the jury reason to infer that defendant was under the influence of a drug at the time of the alleged assault, thereby making the state's version of an unprovoked attack more credible while adversely affecting defendant's credibility.

Notwithstanding the trial justice's instructions to the jury to ignore the objectional matter, the evidence was not sufficiently freed from this prejudicial effect to insure

defendant a fair and impartial trial. *State* v. *Werner*, 87 R. I. 314, 140 A.2d 502 (1958); *State* v. *Lacy*, 87 R. I. 134, 138 A.2d 827 (1958); *State* v. *Peters, supra.*

Since the ultimate finding of guilt or innocence depended mainly upon whether the jury believed defendant or the police witnesses, we cannot agree with the state's further argument that even if there were error involved, it was rendered harmless by the bulk and nature of the state's case. The state's case depended mainly upon the testimony of the police witnesses just as the defense depended upon the testimony of defendant. We cannot say, on this record, that the bulk of the evidence was against defendant or that the evidence was overwhelmingly in favor of the state. *Compare State* v. *Thornley*, 113 R. I. 189, 196, 319 A.2d 94, 98 (1974) *with State* v. *Camerlin*, 108 R. I. 524, 277 A.2d 291 (1971).

On the record before us we cannot say that the verdict was not influenced by the offending remarks. We believe that the ends of justice would be best served if a jury, uninfluenced by improper considerations, passed on the merits, especially since we are unable to say that the instructions of the trial justice removed the prejudicial nature of such error. *Marley* v. *Providence Journal Co.*, 86 R. I. 229, 134 A.2d 180 (1957). Therefore, we hold that the trial justice committed reversible error in refusing to pass the case. In view of this conclusion we need not discuss the other issues raised by the defendant.

The defendant's appeal is sustained, the judgment of conviction is vacated, and the case is remanded to the Superior Court for a new trial.

Mr. Justice Joslin, with whom Mr. Justice Kelleher joins, dissenting. In this case comments by the prosecutor in his opening statement and summation, together with an unresponsive answer by a prosecution witness during rebuttal, revealed to the jury that the defendant and a

companion were seated in an automobile parked in the rear of a business establishment on a summer Saturday afternoon, that they were "drinking something out of a bottle * * * similar to something you would get in a drugstore," and that defendant was "groggy."

Although the absence of a complete transcript makes it impossible for us to consider those bits of information in context — a requisite under *State* v. *Bowden,* 113 R. I. 649, 654, 324 A.2d 631, 635 (1974), whenever a defendant contends that an improper comment has deprived him of a fair and impartial trial — I am willing to concede that those comments may have been extraneous to the ultimate issue of whether defendant assaulted a police officer with a dangerous weapon. But it is quite another thing to say that those revelations, even if extraneous, were so flagrantly improper that they inflamed and aroused the passions of the jurors and became so indelibly etched on their minds that prompt and appropriate cautionary instructions by the trial justice could not disabuse the jurors of their potentially prejudicial effect. And only if that were so could we properly conclude that it was not reasonably possible for the jurors to appraise the evidence objectively and dispassionately and that a mistrial should have been granted. *See State* v. *Costa,* 111 R. I. 602, 609-10, 306 A.2d 36, 40 (1973); *State* v. *Mancini,* 108 R. I. 261, 273-74, 274 A.2d 742, 748 (1971); *State* v. *Kozukonis,* 100 R. I. 298, 303, 214 A.2d 893, 897 (1965); *State* v. *Werner,* 87 R. I. 314, 318-19, 140 A.2d 502, 504 (1958); *State* v. *Lacy,* 87 R. I. 134, 139-40, 138 A.2d 827, 829-30 (1958); *State* v. *Peters,* 82 R. I. 292, 297-300, 107 A.2d 428, 430-32 (1954); *Lavigne* v. *Ballantyne,* 66 R. I. 123, 126, 17 A.2d 845, 846 (1941).

In my view the extraneous information, rather than being likely to incite the prejudices of the jurors, was completely innocuous and could not reasonably be thought

to have had any effect on their determination of the defendant's guilt or innocence. But even if I am too tolerant in that judgment, it is inconceivable to me that the jurors were incapable of heeding the trial justice's instruction to ignore that information. To hold in these circumstances, as do the majority, that the jurors were incapable of compliance is, in my opinion, to cast doubt on the ability of juries generally to disregard any irrelevant evidence or improper prosecutorial comments. That conclusion assumes so little confidence in the intelligence and fairness of jurors as to suggest that an errorless jury trial is virtually impossible to obtain and, at least implicitly, that the jury system ought to be abandoned. Because I find those premises and conclusions untenable, I respectfully dissent.[1]

*Julius C. Michaelson,* Attorney General, *William G. Brody,* Special Asst. Attorney General, for plaintiff.

*Bevilacqua & Cicilline,* for defendant.

---

[1]The only testimony contained in the partial transcript certified to us in this case is that of the defendant, and limited excerpts from the direct examination and the rebuttal of the complaining witness. I therefore find it impossible to pass on the state's contention that the claimed error, if any, was harmless. The majority apparently do not encounter the same difficulty, for they are willing to say:

"The state's case depended mainly upon the testimony of the police witnesses just as the defense depended upon the testimony of defendant. We cannot say, on this record, that the bulk of the evidence was against defendant or that the evidence was overwhelmingly in favor of the state. *Compare State* v. *Thornley,* 113 R. I. 189, 196, 319 A.2d 94, 98 (1974) *with State* v. *Camerlin,* 108 R. I. 524, 277 A.2d 291 (1971)."