372 A.2d 975.
STATE *vs.* ANTHONY W. MANFREDI.
APRIL 25, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

See also, 117 R.I. 990, 369 A.2d 1118.

PAOLINO, J. This is an appeal from a judgment of conviction following a jury verdict of guilty on four counts of an indictment[1] charging the defendant with robbery.

All counts arose from the robbery of a Cumberland Farms Store on Buttonwoods Avenue in Warwick on January 15, 1974. At about 7:30 p.m. on that date four men wearing masks and armed with a pistol and a sawed-off shotgun entered the store. Already present in the store were the store's manager, Albert Walsh, Sr., his helper, Armand J. DiNofrio III, and a number of customers. These individuals were held at gunpoint while the robbers took money from the safe and cash register. The wallets and watches of the store's manager and customers were also taken; nothing was taken from the 13-year-old helper. Because three of the robbers' faces were covered by ski masks and the fourth by a Frankenstein mask, none

[1]Motion for a new trial on a fifth count of robbery, which also resulted in a verdict of guilty against the defendant, was granted, subsequently nol-prossed, and is not before us.

of the victims could give more than a general description of the robbers.

Frederick Clarence Bailey, Heribert Hartl and Raymond "Sully" DeBarros were indicted along with defendant. Since the others pleaded *nolo contendere* and were sentenced on the charges, defendant was tried alone in the Superior Court before a trial justice and jury between March 11 and March 16, 1976.

At trial the store clerk testified for the state. In the course of cross-examination by defense counsel the following exchange took place:

"Q What did they do to Mr. Walsh?
"A They took his watch and his wallet off him, and then they hit him in the back with the gun.
"Q Who hit him?
"A Frankenstein.
"Q How did he hit him?
"A With the butt end of the gun and made him fall on the floor.
"Q Where did he hit him?
"A In the back.
"Q Did he yell?
"A I don't remember.
"Q Did he fall?
"A Yes.
"Q How old was Mr. Walsh?
"A He would have been thirty-six.
"Q Pardon?
"A He would have been thirty-six. That whack is what killed him."

Defense counsel moved to pass the case, stating that he had not elicited the remark concerning the death of Walsh and that the remark would be prejudicial to defendant. The trial justice denied the motion to pass, stating that he thought the answer was responsive and followed from a series of defense counsel's questions. He then issued the following cautionary instruction to the jury:

"Whether Mr. Walsh is or is not deceased, and whether or not this man — this witness — thinks that that striking with the gun had anything to do with his death is immaterial to the issues that we are trying here."[2]

Bailey and Hartl, in consideration for leniency in sentencing for their part in the robbery, also testified for the state later in the trial. Both identified Bailey as the man wearing the Frankenstein mask and testified that defendant had participated in the robbery. The defendant took the stand and denied any knowledge of or participation in the crime.

The jury began deliberations midday on March 16, 1976. After receiving a supplemental charge from the trial justice on the following morning, the jury returned a verdict finding defendant guilty as charged at 2 p.m. on March 17, 1976.

The defendant filed a motion for a new trial. Along with that motion was the affidavit of one juror which defendant sought to introduce in order to impeach the verdict of the jury. The trial justice declined to consider the proffered affidavit and subsequently denied defendant's motion.

The defendant rests his appeal on the claim of three reversible errors at trial. The first error claimed is that the trial justice abused his discretion by giving to the jury a supplemental *Allen*-type[3] charge prior to an indication of deadlock and that the charge was in itself coercive. The defendant also claims error in the trial justice's denial of his motion to pass the case when reference was made to the death of Mr. Walsh; defendant argues that

---

[2] Mr. Albert Walsh, Sr. was deceased at the time of the trial, but there is nothing in the record, other than the testimony of the store clerk, which indicates that his death was connected to the robbery.

[3] See *Allen* v. *United States*, 17 S.Ct. 154, 41 L.Ed. 528, 164 U.S. 492 (1896).

this was an irrelevant and prejudicial remark violating his right to due process and not purged by what he characterized as the weak cautionary instruction given to the jury. Lastly, defendant claims error in the refusal of the trial justice to consider, on defendant's motion for a new trial, the juror affidavit offered by defendant to impeach the verdict.

We address ourselves first to defendant's argument that reference to the death of Mr. Walsh required granting of defendant's motion to pass the case. The question on appeal is "whether in the context of the facts in this case, the trial justice exercised proper discretion in refusing to pass the case." *State* v. *Sfameni*, 115 R.I. 18, 22, 339 A.2d 742, 745 (1975).

Reference to the death of Mr. Walsh was irrelevant in the trial of defendant on robbery charges. This was noted by the trial justice when he ordered the jury to disregard it. As this court has said, "[w]hether a particular statement is prejudicial cannot be determined by a fixed formula." *State* v. *Pugliese*, 117 R.I. 21, 26, 362 A.2d 124, 126 (1976). We have also noted that "it is the rule that in the trial of a criminal offense evidence of other and distinct criminal acts is generally prejudicial." *State* v. *Colangelo*, 55 R.I. 170, 173, 179 A. 147, 149 (1935). The underlying considerations of this general rule have been set forth by this court in *State* v. *Wright*, 70 R.I. 39, 45-46, 36 A.2d 657, 660 (1944), and restated with approval recently in *State* v. *Beaulieu*, 116 R.I. 575, 579-580, 359 A.2d 689, 691 (1976). In the instant case the most pressing consideration is that:

> "[T]he rule tends to insulate the jury from prejudice against a criminal defendant and from confusion growing out of any unnecessary multiplication or obfuscation of the issues." *Id.* at 579-580, 359 A.2d at 691.

We note that mention of Mr. Walsh's death was made early in the trial. It was not until much later in the state's case that it was brought out in the testimony of both Hartl and Bailey that the latter was wearing the Frankenstein mask. During that interval, and depending on the credibility accorded their testimony by the jury, perhaps longer, the jurors may well have thought it possible that defendant was the robber who hit Mr. Walsh and possibly caused his death. An unexplained and unrelated reference to the death of a young man in the course of or as a result of a robbery may well inflame the prejudices of the jurors sitting on a case. When, as here, the trial justice acknowledges the extraneous nature of a statement made in front of the jury and attempts to avoid prejudicial effect by giving a cautionary instruction, the question before us remains whether that instruction can fairly be said to have achieved that goal and erased consideration of the statement from the jury's mind. *State* v. *Costa*, 111 R.I. 602, 609-10, 306 A.2d 36, 40 (1973).

Regardless of our inability to know the precise effect of the reference on each juror or on the ultimate verdict of the jury, there is the possibility that there was in this case an "unnecessary multiplication or obfuscation of the issues." *State* v. *Beaulieu, supra* at 579-580, 359 A.2d at 691. We cannot say the instruction given by the trial justice was sufficient to remove the taint of the statement. Where, as here, doubt exists as to the propriety of the trial justice's refusal to pass the case, such doubt is to be resolved in the defendant's favor. Since we cannot be certain that the jury was not prejudiced by the reference to Walsh's death, we hold that the denial of the motion to pass was reversible error. *State* v. *Werner*, 87 R.I. 314, 140 A.2d 502 (1958). As this holding is dispositive of the appeal before us, we do not reach the question of other errors claimed by the defendant.

The defendant's appeal is sustained, the judgment of conviction is vacated, and the case is remanded to the Superior Court for a new trial.

Mr. Justice Joslin, with whom Mr. Justice Kelleher joins, dissenting. The single, isolated reference in this case to the death of the manager of the Cumberland Farms Store came when a witness for the state, during cross-examination, said, "That whack is what killed him [the store manager]." The majority say that the prejudicial effect of that evidence was so pronounced that even an appropriate cautionary instruction, promptly given, could not eradicate the taint and that consequently the defendant is entitled to a new trial. I disagree.

The only issue before the jury in this case was whether defendant was one of the four robbers. I am at a loss to understand how the majority can find that the lone remark challenged here could have either obscured that issue, thus confusing and misleading the jury, *State* v. *Wright*, 70 R.I. 39, 42, 36 A.2d 657, 658 (1944), or otherwise caused any "unnecessary multiplication or obfuscation of the issues," *State* v. *Beaulieu*, 116 R.I. 575, 359 A.2d 689, 691 (1976), *quoted ante* at 372 A.2d at 977. The mere fact that the testimony was irrelevant to any issue in the case does not necessarily mean that it created a danger of jury confusion. Even if it did, I cannot believe that the jurors were incapable of complying with the trial justice's prompt instruction to ignore it.[1] I remain unwilling, as I said in *State*

---

[1]The full text of the cautionary instruction is as follows:

"Ladies and gentlemen, a statement has come out on the record concerning this witness' opinion as to Mr. Walsh that that is what killed Mr. Walsh, or that is why he died.

"That is not involved in this case. He is a young man who has given an opinion. That is not before you. That is not what we are here to try, and I charge that you disregard the statement.

v. *Sfameni*, 115 R.I. 18, 26, 339 A.2d 742, 746 (1975) (Joslin, J., dissenting), to join those who lack confidence in the intelligence and fairness of juries. I am certainly unwilling to doubt the ability of the jurors in so simple a case as this to comply with an instruction to disregard a single irrelevant remark.

Alternatively, the majority say that the witness' opinion tended so to arouse and inflame the passions and prejudices of the jurors as to deprive defendant of a fair and impartial trial. If that were its effect, then, of course, there would be grounds for reversal. *State* v. *Werner*, 87 R.I. 314, 318-19, 140 A.2d 502, 504-05 (1958). The majority's thesis would be tenable had the witness implicated defendant in the store manager's death; but the uncontroverted testimony is that it was Bailey, not defendant, who struck the allegedly fatal blow. The defendant denied participating in the robbery; it was no reflection on him that an admitted participant in that robbery committed an assault and battery with a deadly weapon in the course of it. *Cf. State* v. *Gancarelli*, 43 R.I. 374, 375, 113 A. 5, 6 (1921). I cannot comprehend how this evidence of that participant's further misdeeds could have made the jury more likely to find defendant guilty; as to him, the evidence was simply irrelevant. Consequently, there is manifestly no logical basis for the majority's conclusion that the witness' opinion about the cause of the store manager's death inflamed and aroused the passions and prejudices of the jury against defendant. Indeed, the authorities seem to hold that evidence concerning the criminal conduct of an accused's codefendants, associates, or alleged accomplices is not prejudicial to the

---

"Whether Mr. Walsh is or is not deceased, and whether or not this man—this witness—thinks that that striking with the gun had anything to do with his death is immaterial to the issues that we are trying here."

**152**

accused and that any error in the admission of such evidence is therefore harmless.[2]

Even assuming, arguendo, that the challenged remark, standing alone, either confused and misled the jurors or aroused their passions and prejudices against defendant, the trial justice's cautionary instruction was clearly sufficient to disabuse their minds of any prejudicial effect. In *State v. Scott,* 114 R.I. 132, 330 A.2d 66 (1974), a unanimous court apparently felt as I do, for it held a substantially

---

[2]*Thomas* v. *United States,* 162 F.2d 301, 303 (5th Cir. 1947) (in prosecution for violation of Marihuana Tax Act, admission of evidence of subsequent marihuana convictions of defendants' alleged supplier, who was not on trial, was not prejudicial); *McGuire* v. *United States,* 152 F.2d 577, 580 (8th Cir. 1945) (in Mann Act prosecution, evidence of relations between appellant's codefendants and prosecuting witnesses was not prejudicial to appellant); *Grell v. United States,* 112 F.2d 861, 873 (8th Cir. 1940) (in mail fraud prosecution, admission of testimony that reflected unfavorably on one defendant was not prejudicial to other defendants); *Reeves* v. *State,* 78 Ga. App. 126, 132, 50 S.E.2d 640, 644 (1948) (in separate prosecutions of two brothers for assault with intent to rape, error, if any, in admission of evidence concerning conduct of each defendant during other's absence was harmless because "* * * the jury in each case would necessarily understand that the defendant on trial was not connected with the conduct of the other brother which occurred in his absence"); *People* v. *Tobin,* 2 Ill. App. 3d 538, 542, 276 N.E.2d 828, 830 (1971) (in burglary prosecution, admission of evidence of arrest of person who was carrying a loaded gun and who was found asleep in car driven by defendant before the burglary was, at worst, harmless error); *State* v. *Hume,* 146 Me. 129, 136-37, 78 A.2d 496, 501 (1951) (in breaking and entering prosecution, error, if any, in admitting evidence of a different breaking and entering committed on the same night by defendant's alleged accomplice was harmless); *accord, United States* v. *Johnson.* 337 F.2d 180, 203 (4th Cir. 1964), *aff'd in part,* 383, U.S. 169, 86 S.Ct. 749, 15 L.Ed.2d 681, *cert. denied in part,* 385 U.S. 846, 87 S.Ct. 44, 17 L.Ed.2d 77-78, *and* 385 U.S. 889, 87 St.Ct. 134, 17 L.Ed.2d 117 (1966); *United States* v. *Rappaport,* 292 F.2d 261, 263 (3d Cir.), *cert. denied,* 368 U.S. 827, 82 S.Ct. 48, 7 L.Ed.2d 31 (1961); *People* v. *Montgomery,* 47 Cal. App. 2d 1, 20-21, 117 P.2d 437, 449 (1941); *Miller* v. *People,* 141 Colo. 576, 580-81, 349 P.2d 685, 687, *cert. denied,* 364 U.S. 851, 81 S.Ct. 97, 5 L.Ed.2d 75 (1960); *Fible* v. *Commonwealth,* 461 S.W.2d 553, 555 (Ky. 1970).

similar instruction[3] sufficient to cure any prejudice resulting from the prosecutor's statement that two of the defendant's alleged accomplices had been charged with misprision of a felony. *Id.* at 140, 330 A.2d at 71.

Nobody questions the right of a criminal defendant to a fair and impartial trial; but he is not entitled, constitutionally or otherwise, to a perfect one. *Lutwak* v. *United States,* 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593, 604-05 (1953). In my opinion, it defies common sense as well as logic and precedent to hold that the witness' irrelevant remark in this case prejudiced the defendant in any way; thus, he was not deprived of a fair and impartial trial. Accordingly, I respectfully dissent.[4]

*Julius C. Michaelson,* Attorney General, *Judith Romney Wegner,* Special Asst. Attorney General, for plaintiff.

*William F. Reilly,* Public Defender, *Barbara Hurst, John A. MacFadyen III,* Asst. Public Defenders, for defendant.

---

[3] 'Ladies and Gentlemen, a preliminary instruction, I have stricken from the record a remark, a statement, made by Mr. Thovmasian just prior to the morning recess. Whether or not any charges were brought against individuals not on trial here is in no way relevant to this proceeding, and may in no way be considered by you people as evidence in the case. In any event, the remark has been stricken from the record and the jury is instructed to disregard it.' "
*State* v. *Scott,* 114 R.I. 132, 140, 330 A.2d 66, 71 (1974) ; compare note 1 *supra.*

[4] Inasmuch as the majority opinion pretermits any discussion of the defendant's remaining assignments of error, I likewise express no opinion thereon.