STATE

v.

Patricia **CARMODY**.

82–349–C.A.

Supreme Court of Rhode Island.

March 9, 1984.

Dennis J. Roberts II, Atty. Gen., Joel D. Landry, Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Asst. Public Defender, Chief, Appellate Division, for defendant.

OPINION

BEVILACQUA, Chief Justice.

The defendant, Patricia Carmody, was charged in a six-count indictment[1] with conspiracy to commit extortion, extortion, kidnapping, possession of a needle and syringe, robbery, and possession of marijuana.

The state dismissed the kidnapping charge, and the charges of possession of a needle and syringe and possession of marijuana were severed from the other charges. Although she was indicted with two other

---

1. A codefendant, Joseph Carr, was granted a motion for severence, and defendant stood trial alone.

people, defendant stood trial alone on the rest of the charges in August of 1981. However, the trial justice granted defendant a judgment of acquittal on the conspiracy charge, finding no evidence of any prior agreement to commit extortion. The jury returned a verdict of guilty as to the remaining two counts, and the trial justice subsequently denied defendant's motion for a new trial.

The record indicates that defendant had been a patient of Dr. Stuart Brodsky. On February 12, 1981, however, they saw each other socially. They met at Cranston Hospital and traveled in separate cars to Dr. Brodsky's residence in Warwick. At the time, neither Mrs. Brodsky nor the Brodskys' children were home. The defendant parked her car in the Brodsky garage, and she and Dr. Brodsky entered the house together.

At one point in the evening, defendant told Dr. Brodsky that she had left her cigarettes in another part of the house. Rather than let Dr. Brodsky retrieve the cigarettes for her, defendant told him that she would get some cigarettes that she had left in her car. This necessitated having Dr. Brodsky turn off the alarm system that is activated when any entrance to the house is open while the system is on.

After deactivating the alarm system, Dr. Brodsky walked to the doorway between the kitchen hallway area and garage where defendant was standing, holding the door to the garage open. As he reached the door, Dr. Brodsky saw two men, one of whom hid his face with a scarf, in his garage trying to force the door open. Both men entered the house and forced the doctor to the floor, holding a gun to his head. Doctor Brodsky testified that one of the men asked him, "Would you like me to fool around with your wife? Well, [defendant] is like my wife."

While in the Brodsky home, the men asked for money and searched the house.

The men made Dr. Brodsky disrobe and get into bed with defendant whereupon they took two photographs with an instant camera. The men told the doctor that defendant would come to his office every week for three months for a prescription for Dilaudid, a narcotic. They said that if he failed to write the prescription or if he reported the incident, they would use the pictures against him. Shortly thereafter defendant left the house with these men.

Doctor Brodsky testified that the next day he telephoned a friend and asked the friend to report the incident to the police. Three days after that, Dr. Brodsky spoke to the police himself.

The defendant telephoned the doctor at the hospital five days after the incident and told him that she was in pain and needed a prescription. When he told her that the special forms needed to write a prescription for Dilaudid were not ready, defendant told him she wanted some cough syrup for herself and her son. After notifying police of the phone call, the doctor left a prescription for the cough medicine at the switchboard in the lobby. The prescription was picked up later in the day.

On February 17, 1981, the police arrested defendant at her home. A search revealed a Polaroid instant camera in the trunk of her car.

The defendant on appeal assigns as error the trial justice's ruling on the following issues: (1) that the trial court abused its discretion in refusing to pass the case when a prospective juror expressed his opinion in front of the jury panel; (2) that the trial justice erred in refusing to give a requested instruction concerning the effect of a witness's bias or motive in assessing credibility;[2] (3) that the trial court abused its discretion in permitting the state to introduce an empty bottle of Dilaudid found in a codefendant's home.[3]

However, in view of our conclusion with respect to the first issue raised, we need not

---

**2.** Insofar as the issue of bias does play such a critical role, and in view of Dr. Brodsky's interest in showing that he was victimized by defendant, it would appear that the trial justice should have given an instruction on that issue.

**3.** Even if this evidence was improperly admit-

discuss in detail the other issues raised by defendant.

In the case before us during the voir dire, while prospective jurors were being questioned collectively, one of the prospective jurors indicated that his deceased mother had been a patient of Dr. Brodsky's. In responding to questioning, he indicated that he had read certain newspaper articles and had formed an opinion about defendant's culpability. Although cautioned by the court not to reveal his opinion, he stated that he believed defendant to be guilty. The defendant moved to pass the case. However, the court denied the motion.

The trial justice did not give any cautionary instructions after the incident occurred but instead recessed for the day. The following morning, the trial justice gave an instruction on the presumption of innocence but failed to direct the jurors clearly to disregard the juror's comment. The trial justice also cautioned the jury panel that opinions gathered from reading newspaper articles should not become so fixed that they could not be laid aside. The trial justice then questioned the jurors collectively about whether they had discussed the case with the biased juror; one of the jurors admitted to having discussed the case. The trial justice then excused the biased juror.

The defendant argues that he was prejudiced when a prospective juror, in the presence of other prospective jurors who later served on the jury, expressed his opinion that defendant was guilty of the crimes for which she was to be tried.

The state contends that the trial justice exercised her discretion and that by giving a cautionary instruction cured the error. We disagree.

■ The right to a fair trial by an impartial jury is guaranteed by the Sixth Amendment to the United States Constitution and is applied to the states through the Fourteenth Amendment and art. I, sec. 10, of the Rhode Island Constitution. *State v. Berberian,* 118 R.I. 413, 417–18, 374 A.2d 778, 781 (1977). In the prosecution of a criminal offense, the trial justice has a duty to keep jurors free from external influence, as well as from extraneous matters. *People v. Bannerman,* 59 A.D.2d 719, 720, 398 N.Y. S.2d 370, 372 (1977). A jury verdict must be based upon the "evidence received in open court, not from outside sources." *Sheppard v. Maxwell,* 384 U.S. 333, 351, 86 S.Ct. 1507, 1516, 16 L.Ed.2d 600, 613 (1966).

■ On review, our inquiry is limited to whether the trial court abused its discretion in refusing to pass the case. *State v. Manfredi,* 118 R.I. 144, 148, 372 A.2d 975, 977 (1977) (quoting *State v. Sfameni,* 115 R.I. 18, 22, 339 A.2d 742, 745 (1975)). We have recognized that there is no fixed formula in determining whether a statement is prejudicial. *State v. Pugliese,* 117 R.I. 21, 26, 362 A.2d 124, 126 (1976). However, extrajudicial communication in a criminal case raises a presumption of prejudice to defendant and the state has the burden of establishing that the comments are harmless. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–11, *reh. denied,* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967).

■ This court recognizes that it is within the trial justice's discretion in the first instance to determine whether a statement is prejudicial. *State v. Sfameni,* 115 R.I. 18, 22, 339 A.2d 742, 744 (1975). The trial justice must ascertain the extent of the taint and thereafter, in his or her sound discretion, take appropriate means to ensure a fair trial. *State v. Massey,* 119 R.I. 666, 669, 382 A.2d 801, 802 (1978). It is the trial justice's duty, once the complaint is made, to attempt to dispel the taint with a proper warning or cautionary instruction. *Lavigne v. Ballantyne,* 66 R.I. 123, 126, 17 A.2d 845, 846 (1941).

■ In such a case as this, the duty of the trial justice is clear. The unsworn testi-

ted, it apparently did not make the probability of defendant's innocence more or less likely. However, in view of the other evidence, the

introduction of this evidence though erroneous, was probably harmless.

mony of a juror regarding a fact that is relevant to the determination of an issue before the jury constitutes misconduct in itself. The proper standard to be applied in the case of juror misconduct is that a new trial must be granted unless it appears beyond a reasonable doubt that no prejudice has resulted. *See Chapman v. California*, 386 U.S. at 24, 87 S.Ct. at 828, 17 L.Ed.2d at 710–11; *State v. Massey*, 119 R.I. at 672, 382 A.2d at 804.

In *State v. Massey*, 119 R.I. 666, 382 A.2d 801 (1978), which is similar to the instant case, the trial justice refused to pass the case when a prospective juror stated in front of the prospective jury panel that he believed that the defendant was guilty. When this occurred, the trial justice immediately addressed the jurors. He questioned them to see "if any of them would feel prejudiced by the remark." *Id.* at 671, 382 A.2d at 803–04. This court reversed on the ground that the trial justice did not clearly admonish the jurors "that they were not to consider the statement." *Id.*

The cautionary instruction here was also general. Furthermore, it was given a day later. Although it stressed the presumption of innocence, it did not clearly direct the jurors to disregard the juror's comments. The juror stated not only that he had read newspaper articles but also that his mother was a patient of the doctor. Undoubtedly, the comments that he was of the opinion that defendant was guilty were clearly improper.

We believe that it was highly prejudicial here for the jurors to overhear a party so closely tied to the complaining witness. Although the trial justice attempted to negate the prejudice by instructing the jury the following day with a general instruction that they were to decide the case on the evidence submitted in open court, we feel that the circumstances give rise to the strong possibility that the verdict was tainted by the statements of the juror.

We conclude that the instructions given by the trial justice were insufficient to negate the prejudice that flowed from the statements based on extrajudicial sources and that the trial court abused its discretion in failing to grant the defendant's motion to pass the case.

The defendant's appeal is sustained, the judgments of conviction are vacated, and the case is remanded to the Superior Court for a new trial.