STATE

v.

Paul PUSYKA.

No. 90–60–C.A.

Supreme Court of Rhode Island.

June 10, 1991.

James E. O'Neil, Atty. Gen., and Robert Craven, Jane McSoley, and Jeffrey Greer, Asst. Atty. Gen., for plaintiff.

John F. Cicilline, Providence, for defendant.

## OPINION

FAY, Chief Justice.

This case is before the Supreme Court on appeal by the defendant, Paul Pusyka, from a Superior Court jury conviction of first-degree arson. The defendant claims that the trial justice committed error (1) by denying the defendant's motion to suppress clothing seized from the defendant's person, (2) by denying the defendant's motion to prevent Sergeant Angelo Rotondo (Rotondo) from sitting at counsel table, (3) by allowing the state to admit admissions made previously by the defendant during a civil proceeding, (4) by refusing to pass the case on the basis of information supplied by a juror, or in the alternative by conducting an inadequate voir dire based upon that same information, and (5) by instructing the jury that a witness's prior inconsistent statement could not be considered as substantive evidence. For the reasons set forth herein, we affirm the judgment of conviction entered in the Superior Court.

In 1981 defendant and his mother purchased the property located at 1896 Smith Street in North Providence for $85,000. The defendant expended an additional $115,000 in order to convert the existing automobile showroom and service garage located on the property into a delicatessen. In November 1982 defendant opened Paul's Fruit and Deli (deli) for business. From November 1982 through January 1984 defendant made a weekly profit of approximately $50. In 1984 defendant's profit decreased to $35 per week. In May 1985 defendant increased his insurance coverage from $85,000 to $250,000.

On August 28, 1985, at approximately 4 a.m. an explosion occurred at defendant's deli. Testimony elicited at trial revealed not only that the building was completely destroyed but that the explosion also damaged surrounding structures. Subsequent to the explosion defendant was discovered behind a bakery adjacent to his store, dazed and apparently injured. Police Detective Raymond Torregrossa (Torregrossa) and a rescue team administered aid to defendant, at which time they detected a strong odor of gasoline emanating from defendant's clothing. In order to assess defendant's medical condition, rescue workers removed his shirt. Torregrossa took custody of the shirt and accompanied defendant to the hospital. At the hospital defendant's sneakers and pants were removed, and Torregrossa took custody of those as well.

At trial the prosecution provided overwhelming evidence to support its theory that the explosion occurred as a result of the building's having been deliberately saturated with gasoline. Additionally the prosecution's expert testified that defendant's clothing tested positive for the presence of heavy gasoline residue. This finding, the expert stated, indicated that defendant was someone who had actually handled gasoline as opposed to someone who was merely close to the explosion itself.

The defendant testified on his own behalf. He stated that prior to the explosion he had received threatening phone calls and a number of the deli's front windows had been broken. He further testified that he walked to work the day of the explosion and, upon arriving, noticed that a side door was ajar. The defendant claimed that he approached the door to investigate and was

subsequently blown backward from the force of the explosion.

Although defendant raises a number of issues on appeal, after hearing the arguments of counsel and reviewing the briefs submitted by the parties, we find only two of those issues meritorious. Our decision and analysis, therefore, will be focused accordingly.

 The defendant contends that the trial justice erred by denying defendant's motion to pass on the basis of information supplied to the court by a juror, or in the alternative, defendant avers that the trial justice erred by conducting an inadequate voir dire of the entire jury based upon the same information. Proper assessment of this contention requires us to examine the circumstances surrounding the juror's disclosure. Prior to defense counsel's closing argument Angelo Pezullo (Pezullo), a juror, expressed his desire to be excused from the jury. In response to that request the trial justice invited both Pezullo and counsel to approach the sidebar. During the ensuing conversation Pezullo made a number of general remarks. He expressed concern about something that had apparently happened the night before. Pezullo used such phrases as "jumping the gun" and "hitting below the belt." After the trial justice made several attempts to elicit more specific information from Pezullo, it eventually became clear that Pezullo was referring to media coverage of the trial. The trial justice acknowledged that there had in fact been an article in the morning edition of the Providence Journal concerning the trial. The trial justice additionally stated, however, that in his opinion the article gave an objective account of the evidence elicited at trial. Nevertheless, in the interest of exercising extreme caution, the justice had earlier ordered the sheriff to confiscate any newspapers brought in by the jurors. Pezullo told the court that a conversation had taken place in the coffee shop that had led him to believe that all the jurors were aware of the article. Pezullo was then asked how many of the jurors had participated in the discussion. He responded, "[A]11 of them. My God, I mean,

we didn't make it a table talk. It's just in their minds." The justice then inquired whether Pezullo was making any assumptions. Pezullo said, "[O]h no, they didn't say it," and "[N]aturally I'm assuming it." In his very next statement, however, Pezullo insisted that he was not making assumptions but relying only upon facts. Pezullo was then asked again how many persons were involved in this conversation. At this time he indicated only one.

The trial justice concluded that the court had no choice but to conduct an individual voir dire of the jury. Consequently each juror was brought into the courtroom and asked a series of questions designed to determine whether he or she had read about or discussed any news accounts regarding the trial. All the jurors denied having seen or heard any media coverage or having engaged in any discussion about it with their fellow jurors. A number of the jurors admitted that when they were asked not to read the morning edition, they surmised that there had been an article in the paper. One juror even admitted to having made a comment to that effect when the sheriff asked him not to read the morning paper. All the jurors denied taking part in any discussion in the coffee shop regarding the case or the media coverage.

Following the voir dire the trial justice determined that Pezullo's statements, unlike those made by the other jurors, were vague and offered no real information indicating that the jury had been adversely affected. If anything, the judge concluded, Pezullo's remarks indicated that his own judgment had been tainted. In light of this potential prejudice the trial justice excused Pezullo and replaced him with an alternate juror.

It is well-settled law that the question of whether to grant a motion to pass a case is a matter within the sound discretion of the trial justice. *State v. Martellini*, 533 A.2d 527, 529 (R.I.1987); *State v. Brown*, 522 A.2d 208, 210 (R.I.1987); *State v. Carmody*, 471 A.2d 1363, 1366 (R.I.1984). Our inquiry is limited, therefore, to whether the trial justice abused that discretion. *Car-*

*mody,* 471 A.2d at 1366. In the context of possible jury prejudice this court has acknowledged that there is no bright-line test to determine whether a particular statement is prejudicial. *Id.* (citing *State v. Pugliese,* 117 R.I. 21, 26, 362 A.2d 124, 126 (1976)). The trial justice must determine the extent of the prejudice and thereafter take the appropriate steps to ensure a fair trial. *Carmody,* 471 A.2d at 1366 (citing *State v. Massey,* 119 R.I. 666, 669, 382 A.2d 801, 802 (1978)). In a criminal case, however, we have held that extrajudicial communication "raises a presumption of prejudice to defendant and the state has the burden of establishing that the comments are harmless." *Carmody,* 471 A.2d at 1366; *see Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–11, *reh. denied,* 386 U. S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967).

In *Carmody* we were faced with a factual situation in which the jurors, during voir dire, heard another potential juror state that his mother had been a patient of the defendant, that he had read newspaper articles about the case, and that he believed the defendant to be guilty. *Carmody,* 471 A.2d at 1366. The following day the trial justice issued, to the jury, a general cautionary instruction focused on the presumption of innocence. *Id.* On appeal we held that the cautionary instruction given by the trial justice was inadequate to overcome the prejudice created by hearing a party, closely tied to the defendant, express a belief of guilt. *Id.* at 1367.

The facts of the present case are disparate from those previously before us in *Carmody.* In *Carmody* there was no question that the jury had been exposed to a potential juror's prepossessed comments regarding the defendant's guilt. Additionally the trial justice made no immediate attempt to counteract the prejudicial remarks. As we have already noted, it was not until the following day that the trial justice gave what we later determined to be an inadequate curative instruction. In the case at bar the indications differed significantly with respect to whether any extrajudicial comments had ever been made. Upon receiving notice of the possibility of such

inappropriate remarks, the trial justice took immediate steps to assess the situation. A voir dire of the entire jury seriously called into question Pezullo's claim that any inappropriate conversation ever took place. At most the record reveals that the mere existence of an article may have been mentioned, the subject of which the trial justice found to have been an objective account of the evidence elicited at trial and not likely to cause prejudice in any event. In the instant case the trial justice clearly acted in a timely manner to determine the existence and/or extent of any possible prejudice and subsequently made findings clearly supported by the record. Accordingly we find that the trial justice did not abuse his discretion in denying defendant's motion to pass.

 The defendant argues additionally that the court erred by instructing the jury that a witness's prior inconsistent statement could not be considered substantive evidence.

Before the adoption of Rule 801 of the Rhode Island Rules of Evidence, this court had long recognized the rule that the prior inconsistent statement of a witness could be introduced for impeachment purposes only. *State v. Coppola,* 502 A.2d 802, 804 (R.I.1985). Rule 801(d)(1)(A), however, admits all prior inconsistent statements as substantive evidence as long as the declarant testifies at trial and is available for cross-examination. Pursuant to both the old and the new rule, the two statements must be sufficiently inconsistent to render the prior statement admissible. *Coppola,* 502 A.2d at 804–05. The determination of whether a prior statement is in fact inconsistent with the witness's in-court testimony is a matter within the sound discretion of the trial justice. *State v. Robbio,* 526 A.2d 509, 513 (R.I.1987); *State v. Cianci,* 430 A.2d 756, 762 (R.I.1981).

During the state's case in chief, the prosecutor called Robert Lawson (Lawson) to the stand. On direct examination Lawson testified that on the date of the explosion he lived two doors away from the deli. Lawson told the court that on August 28,

1985, at approximately 4 a.m., he and his wife were awakened by a loud explosion. Soon after, Lawson exited his house by the back door whereupon he saw defendant behind the bakery, located between his house and the deli, slumped over and bleeding from the head.

On cross-examination defense counsel confronted Lawson with a statement he had given the police shortly after the explosion. At first Lawson denied making the statement, but upon reading it in his own handwriting, he subsequently acknowledged giving the statement. Lawson had said that he had seen defendant on the sidewalk, heard an explosion, and then saw defendant blown backward from the force of the explosion into a telephone pole. Lawson went on to characterize his previous statement to the police as a "mischoice of words" and further testified that in the heat of the excitement he must have surmised that that was the way it had happened and mistakenly wrote it sounding like an actual observation.

During the trial justice's charge to the jury, he stated the following:

"The credibility of a witness may be attacked by introducing evidence that on some former occasion he or she made a statement or acted in a manner inconsistent with his testimony in this case on matters material to this trial. Evidence of this kind may be considered by you in connection with all other facts and circumstances in evidence in deciding the weight to be given to the testimony of that witness.

"A prior inconsistent statement is not evidence itself. It can be used only to impeach a witness, that is, as affecting the credibility of that witness."

At the close of the jury instructions defense counsel objected to the above-quoted portion of the instruction, claiming that the jury should be able to consider the testimony elicited from Lawson during cross-examination as substantive evidence. After refreshing his memory respecting Lawson's testimony, the trial justice refused to alter his instruction, stating, "I don't see how I can alter that; that's what he said here."

There is no question that the trial justice's general instruction regarding the consideration to be given a prior inconsistent statement was erroneous. The question then becomes whether that inaccuracy prejudiced defendant. We find that it did not.

What the trial justice may have meant by his response to defense counsel's objection is somewhat unclear. If the statement is interpreted to mean that he did not find the requisite inconsistency between the two statements, then the prior statement is inadmissible for any purpose. *Coppola*, 502 A.2d at 804–05. As we have already stated, whether a prior statement is inconsistent with an in-court statement is a matter properly left to the discretion of the trial justice. There is nothing in the record before us to suggest that the trial justice abused his discretion in making such a finding. Additionally, because Lawson's prior statement was admitted into evidence with no subsequent curative instruction, if any prejudice occurred, it did so at the expense of the state.

Assuming arguendo that Lawson's prior statement is sufficiently inconsistent with his in-court testimony to render it admissible pursuant to Rule 801(d)(1)(A), we find that the defendant is correct in his assertion that the jury should have been allowed to consider it as substantive evidence. Rule 52 of the Superior Court Rules of Criminal Procedure provides, however, that an error "which does not affect substantial rights shall be disregarded." Because a review of the record reveals an abundance of evidence to support the jury's guilty verdict, we find that the trial justice's erroneous instruction and his subsequent refusal to alter that instruction in no way affected the final outcome of the case and, therefore, pursuant to Rule 52, is harmless error. Accordingly we deny the defendant's appeal with respect to this issue.

For the reasons stated herein, the defendant's appeal is denied and dismissed. We affirm the judgment of conviction and remand the case to the Superior Court.